**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| Robert D. Zigman,<br><br>                                    Plaintiff,<br><br>                 -v-<br><br>Meyers, Saxon & Cole, Irwin Meyers, and Robert Saxon,<br><br>                                    Defendants. | 2:23-cv-8954<br>(NJC) (AYS) |

**MEMORANDUM AND ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

Plaintiff Robert D. Zigman ("Zigman") filed this action on December 6, 2023, bringing several claims against Defendants Meyers, Saxon & Cole, Irwin Meyers, and Robert Saxon (together "Defendants") under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq., and the New York General Business Law, N.Y. Gen Bus. Law ("NYGBL") § 349 et seq. (Compl. ¶¶ 88–110, ECF No. 1.) The claims stem from two default judgments entered against Zigman in New York state court for failure to pay assessments on property owned by Zigman that is subject to two property owners' associations in Pennsylvania, one going by the name "Indian Rocks" and the other, "The Hideout." (Pl.'s Mem. Law Supp. Cross-Mot. Summ. J. & Opp'n Defs.' Mot. ("Pl.'s MSJ Mem.") at 1, ECF No. 33-2; Defs.' Ex. A ("Zigman Dep.") 16:15–18:10, 33:25–35:12, ECF No. 32-3.) Zigman argues that Defendants—the attorneys and firm that initially represented Indian Rocks and The Hideout in the two default judgment actions—failed to properly serve Zigman with the summonses and complaints in the two cases and thereafter obtained default judgments against him by "false, fraudulent and misleading [d]ocumentation" in violation of the FDCPA and NYGBL. (Pl.'s MSJ Mem.)

Presently before the Court are the parties' fully-briefed cross-motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). (Def.'s Not. Mot., ECF No. 32; Defs.' Mem. L. Supp. Defs.' Mot. Summ. J. ("Defs.' MSJ Mem."), ECF No. 32-1.) The central issue is whether the two default judgment actions were attempts to collects "debts" as defined by the FDCPA. For the reasons set forth below, based on the undisputed record, the default judgment actions were not attempts to collect "debts" as defined by the FDCPA, and therefore, I grant summary judgment to Defendants on Zigman's FDCPA claims. Having granted summary judgment on the only federal claims in this action, I decline to exercise supplemental jurisdiction over Zigman's NYGBL claim and dismiss that claim without prejudice and with leave to file in state court.

## JURISDICTION

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the Complaint alleges violations of federal law under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq. (Compl. ¶¶ 88–106.) The Court has supplemental jurisdiction over the NYGBL claim pursuant to 28 U.S.C. § 1637. Zigman does not assert that the Court has original jurisdiction over his NYGBL claim, Compl. ¶¶ 3–7, nor does he dispute Defendants' argument that diversity of citizenship does not exist, as required to establish diversity jurisdiction under 28 U.S.C. § 1332. (*See* Defs.' MSJ Mem. at 9; Pl.'s MSJ Mem. at 7–9.)

Venue in the Eastern District of New York is proper under 28 U.S.C. § 1391(b)(2) because the alleged events took place in the Eastern District of New York. (Compl. ¶ 7.)

2

**FACTUAL BACKGROUND**

Most of the facts at issue in this case are not in dispute. The parties agree that at one time Zigman owned building lots at Indian Rocks and The Hideout, but he has "little or no recollection" regarding the purchases. (Pl.'s Am. Resp. Defs.' Rule 56.1 Statement ("Pl.'s Rule 56.1 Statement Resp.") ¶¶ 4, 9, ECF No. 42; *see also* Zigman Dep. 16:9–23:8, 33:25–38:5.) The parties do not identify in their Rule 56.1 Statements any evidence in the record that can fill the gaps in Zigman's memory. Therefore, the totality of the evidence concerning the lots is captured in the following paragraphs.

In what "could have been" 2006, Zigman purchased on ebay several building lots in Pennsylvania, though he does not know where in the state the lots are located. (Zigman Dep.16:18–20, 17:18–22, 19:23–20:7, 21:18–22:2, 34:13, 35:2–3, 36:10–18.) He also does not remember how much he paid for the lots, but he attests that they "couldn't have been worth . . . anything" and he probably paid only "a few hundred dollars" for them, "maybe one [lot] for 1,0000 [dollars]." (*Id.* 22:13–20 (Indian Rocks); 36:21–37:8 (The Hideout).)

Beyond that, the record is limited. Zigman cannot recall how many building lots he purchased or whether he still owns the lots. (*Id.* 19:13–20:23, 36:5–15.)[1] He also did not realize at the time of purchase that Indian Rocks and The Hideout were property owners' associations, much less that they had his mailing address. (*Id.* 17:18–18:4, 21:11–17, 37:25–38:5; *see also* 21:16–17 (testifying that he has "never talked to" anyone from Indian Rocks).) During his deposition, Zigman was asked separately with respect to each property owners' association his

---

[1] Initially Zigman said that he no longer owned any of the building lots in Indian Rocks. (Zigman Dep. 18:11–14.) Later, when asked if he was "fairly certain" that he no longer owned any of the Indian Rocks lots, he said that he "could [own them]" and did not know because he had "never looked into it." (*Id.* 20:17–23.)

"purpose" or "plans" in buying the lots. (*Id.* 22:3–4, 37:9–10) Each time he explained: "[T]here was really no purpose. I mean, . . . my lawyer will probably object but, other than being retarded, that's the only reason I bought them. There was really no rhyme or reason for buying them." (*Id.* 22:5–10, 37:9–23; *see also id.* 37:21–23 ("[T]here was no rhyme or reason . . . I don't know what was going through my head back then.").)[2]

The parties do not point to any evidence to the contrary. In fact, the parties agree that Zigman never resided at the lots at Indian Rocks or The Hideout. (Pl.'s Rule 56.1 Statement Resp. ¶¶ 3, 8.)[3] They also agree that Zigman "did not attempt to develop the lots in any way." (Pl.'s Rule 56.1 Statement Resp ¶¶ 6, 11.) Moreoever, in his deposition, Zigman attested that when he purchased the lots, he did not have any plans for them, and he "never did anything with [the lots]." (Zigman Dep. 20:20–23; 37: 9–13.) As of his deposition, Zigman had "no idea what's going on with them." (*Id.* 36:3–4.)

On February 27, 2014, Defendants sued Zigman on behalf of Indian Rocks in the First District Court of Nassau County for failure to pay property owners' association assessments on Zigman's Indian Rocks lots. (Defs.' Resp. Pl.'s Rule 56.1 Statement ("Defs.' Rule 56.1 Statement Resp.") ¶ 1, ECF No. 47; *see also* Zigman Dep. 17:10–18:4.) The case appears at

---

[2] It is not clear from the record whether Zigman means to indicate that he is intellectually disabled or whether he uses the word "retarded" as a slur. However, drawing all inferences in the light most favorable to the non-moving party, I assume for the sake of Defendants' motion that Zigman's testimony is that he has an intellectual disability. *See Cunningham v. Cornell Univ.*, 86 F.4th 961, 980 (2d Cir. 2023), *rev'd on other grounds,* 145 S. Ct. 1020 (2025).

[3] Zigman's counsel further represents in his response to Defendants' Rule 56.1 Statement that the "[s]ubject property is vacant land," but does not provide any citation to establish such a fact. Pl.'s Rule 56.1 Statement Resp ¶ 3. As a result, I strike this clause from the Rule 56.1 Statement and do not consider it. *See* Local Rule 56.1(d) (requiring that each statement denying a material fact "must be followed by citation to evidence").

*Indian Rocks v. Zigman*, Index No. CV-3423-14/NA (Nassau Cnty.). An affidavit of service signed by Nasser Atrash on March 26, 2014 attests that at 9:49 AM on March 25, 2014 Atrash served a summons and verified complaint on a "JOHN DOE, CO-OCCUPANT of ROBERT ZIGMAN" at an address on Rose Lane in East Rockway, New York. (ECF No. 25-4.)[4] This address appears on Zigman's driver's license. (Pl.'s Rule 56.1 Statement Resp. ¶ 1.) The parties dispute whether Zigman resides at the address on his driver's license. (*Compare* Defs.' Rule 56.1 Statement ¶ 1 (Zigman "resides" at the Rose Lane address), *with* Zigman Dep. 10: 17–12:13 (attesting that he had not lived at the Rose Lane address in "like, 20 years" but had not updated his driver's license).) A default judgment in the amount of $11,602.72 was entered against Zigman on August 18, 2014 in the Indian Rocks lawsuit. (Defs.' Rule 56.1 Statement Resp. ¶ 6.)

The following year, on August 31, 2015, Defendants sued Zigman on behalf of The Hideout in the Nassau County Supreme Court for failure to pay property owners' association assessments on Zigman's lots at The Hideout. (Defs.' Rule 56.1 Statement Resp. ¶ 17; *see also* Zigman Dep. 34:24–35:3.) That case appears at *The Hideout v. Zigman*, Index No. 605640/2015 (Nassau Cnty. Sup. Ct.). According to an affidavit of service executed by Atrash, on October 15, 2015, a summons and complaint were served on Zigman by "substituted service" on a woman at the Rose Lane address but the affidavit includes the notion "THREW IT AWAY." (Defs.' Rule 56.1 Statement Resp. ¶ 21.) A default judgment in the amount of $117,364.57 was entered

---

[4] Zigman's Rule 56.1 Statement states that "Defendant(s) application package . . . failed to include any Affidavit of Service upon the Plaintiff." Defs.' Rule 56.1 Statement Resp. ¶ 5. However, Zigman does not provide a citation for this assertion, and it is not clear whether he contests the authenticity of the affidavit of service or that it shows service upon Zigman. As a result, I consider the facts set forth in the affidavit of service uncontested. *See* Local Rule 56.1(d).

against Zigman on December 3, 2015 in The Hideout lawsuit. (Defs.' Rule 56.1 Statement Resp. ¶ 26.)

Zigman acknowledges that he did not pay any property owners' association assessments to either Indian Rocks or The Hideout. (Zigman Dep. 22:24–23:4, 35:21–24.) However, he attests that he did not receive any assessment invoices from either property owners' association and that he did not realize that property owners' associations charge annual assessments. (*Id.* 17:23–18:4, 20:8–21:3.) Zigman attests that he first learned of the default judgments against him during a title search in July of 2023. (*Id.* 23:19–24:2; *see also* Defs.' Rule 56.1 Statement Resp. ¶ 8.) He thereby implies, without directly stating, that he did not receive the summons or complaints relating to either lawsuit, which were served to persons located at the Rose Lane address on March 26, 2014 and October 15, 2015. (Pl.'s Rule 56.1 Statement ¶ 22.) He acknowledges, however, that he never notified either Indian Rocks or The Hideout of any changes of address because he was unaware he "had to" or that the property owners' associations had his address to begin with. (Zigman Dep. 21:8–17) I assume the parties' familiarity with the remainder of the factual record concerning the default judgment actions.

**PROCEDURAL HISTORY**

Zigman commenced this action by filing a Complaint on December 6, 2023. (Verified Compl.) On April 8, 2024, Magistrate Judge Anne Y. Shields set an initial Scheduling Order for discovery. (Elec. Order, Apr. 8, 2024.) Nine months later, on January 15, 2025, discovery completed, and shortly afterwards, Zigman filed a letter requesting a pre-motion conference in anticipation of filing a motion for summary judgment. (ECF Nos. 20–21.) Because the letter failed to comply with the Court's Individual Rules, I ordered that the parties file additional submissions. (Elec. Order, Jan 29, 2025.) After receiving those submissions, I waived the pre-

motion conference requirement and set a briefing schedule for cross-motions for summary judgment. (Elec. Orders, Jan. 29, 2025, Apr. 6, 2025.)

Pursuant to the briefing schedule and the Court's recommended bundling practice, Defendants filed what they purported were "all of the papers attendant to both pending Motions." (ECF No. 41.) However, these submissions suffered from several problems. First, Zigman's response to Defendants' 56.1 Statement did not conform with Individual Rule 5.5.3 because it did not "quote verbatim from Defendants' Statement." (Elec. Order, Jul. 7, 2025.) Second, the parties had not filed Defendants' Opposition to Zigman's Cross Motion for Summary Judgment or Defendants' Responsive Local Civil Rule 56.1 Statement with exhibits. (*Id.*) Despite ordering the parties to correct these issues, I had to issue several subsequent orders and schedule a telephone conference because of the parties' inability to file the requested materials on the docket. (*See* Elec. Orders, Jul 10, 2025, Jul. 14, 2025.) Eventually, on July 15, 2025, the parties submitted the missing documents, and I adjourned the telephone conference that had been scheduled to resolve these issues.

Zigman's 56.1 Statement and his response to Defendants' 56.1 Statement remain defective because some of the statements within them are not "followed by citation to evidence." Local Rule 65.1(d). Likewise, Zigman's memoranda of law do not comply with Individual Rule 5.5.9 because they do not "cite the relevant paragraphs of [the] Local Rule 56.1 statements," nor do they contain any other factual citations. (*See generally* Pl.'s MSJ Mem.; Pl.'s MSJ Reply., ECF No. 41.) Nonetheless, I consider the Cross Motions fully briefed because Zigman was given multiple opportunities to correct the defects in his papers and failed to do so, despite being represented by counsel.

7

Finally, on December 1, 2025, I scheduled this action for oral argument. (Elec. Order, Dec. 1, 2025.) After further review of the parties' submissions, I adjourned the argument because I determined it to be unnecessary. (Elec. Orders, Jan. 24, 2026.)

## LEGAL STANDARDS

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a material question of fact. *Balderramo v. Go N.Y. Tours Inc.*, 668 F. Supp. 3d 207, 219 (S.D.N.Y. 2023) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).[5] "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Cunningham v. Cornell Univ.*, 86 F.4th 961, 980 (2d Cir. 2023), *rev'd on other grounds,* 145 S. Ct. 1020 (2025) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of "material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In order to defeat summary judgment, the non-moving party must set forth sufficient facts showing that there is a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c). Under this standard, if the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). The non-moving party "may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010); *see also Daly v. Westchester Cnty. Bd. of Legislators*, No. 23-cv-1220, 2024 WL 3264125, at *2 (2d Cir. July 2,

---

[5] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, brackets, and citations.

2024) (summary order). "Mere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks*, 593 F.3d at 166.

A court considering whether summary judgment is appropriate "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Cunningham*, 86 F.4th at 980; *see also Woods v. Centro of Oneida, Inc.*, 103 F.4th 933, 939 (2d Cir. 2024) ("We may find for the movant defendant only if we conclude that on the record presented, considered in the light most favorable to the non-movant plaintiff, no reasonable jury could find in the plaintiff's favor."). If "the party opposing summary judgment propounds a reasonable conflicting interpretation of a material disputed fact," summary judgment must be denied. *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9 (2d Cir. 1983).

## DISCUSSION

### I.      FDCPA Claims

The FDCPA "establishes certain rights for *consumers* whose *debts* are placed in the hands of professional *debt collectors* for collection." *Vincent v. The Money Store*, 736 F.3d 88, 96 (2d Cir. 2013) (emphasis added). To establish a violation under the FDCPA,

> (1) the plaintiff must be a "consumer" who allegedly owes the <u>debt</u> or a person who has been the object of efforts to collect a consumer <u>debt</u>, and (2) the defendant collecting the <u>debt</u> is considered a "debt collector," and (3) the defendant has engaged in any act or omission in violation of FDCPA requirements.

*Wilkins v. Specialized Loan Servicing, LLC*, 623 F. Supp. 3d 264, 270 (S.D.N.Y. 2022) (emphasis added). Thus, "the [FDCPA] does not cover every 'debt' that a consumer might incur." *Rosa v. Mandarich L. Grp., LLP*, No. 22-cv-4720, 2024 WL 871209, at *5 (S.D.N.Y. Feb. 29, 2024). It "applies only in instances where a debt collector attempts to collect a 'debt' within the meaning of the Act." *Scarola Malone & Zubatov LLP v. McCarthy, Burgess & Wolff*,

9

638 F. App'x 100, 102 (2d Cir. 2016); *see also Nicolaides v. Divine & Serv., Ltd.*, 382 F. Supp. 3d 251, 254 (E.D.N.Y. 2019).

The FDCPA defines "debt" to mean "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5); *see also Eades v. Kennedy, PC L. Offs.*, 799 F.3d 161, 170 (2d Cir. 2015). "By the statute's plain language, it is not sufficient that the plaintiff be a natural person or even a consumer obligated to pay a debt." *Rosa*, 2024 WL 871209, at *5 (citing *Paushok v. Ganbold*, 2022 WL 1421844, at *2 (2d Cir. May 5, 2022) (summary order)). Instead, "whether an obligation is a 'debt' depends . . . upon the purpose for which it was incurred." *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 83 (2d Cir. 2018).

Here, Defendants argue that the FDCPA does not apply to Zigman's claims because he has not shown a material dispute of fact as to whether either of the two default judgment actions constituted attempts to collect money arising out of a transaction incurred "primarily for personal, family, or household purposes." (Defs.' MSJ Mem. at 4–5 (quoting 15 U.S.C. § 1692a(6).) In making this argument, Defendants largely conflate the purpose of Zigman's original purchase of the lots at Indian Rocks and The Hideout with the purpose of the unpaid property owners' association assessments imposed on him related to those lots. (*See id.*) Although the Second Circuit has not addressed this question, courts considering whether Home Owners' Association assessments constitute a debt under the FDCPA have recognized that the "relevant transaction[] in these cases [is] the purchase of the . . . homes." *Newman v. Boehm, Pearlstein & Bright, Ltd.*, 119 F.3d 477, 481 (7th Cir. 1997) (reasoning that the FDCPA's

10

definition of "debt" focuses on the "transaction creating the obligation to pay" and the obligation to pay past-due assessments arises from the purchase of the underlying property); *see also Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 698 F.3d 290, 293 (6th Cir. 2012) (same); *Agrelo v. Affinity Mgmt. Servs., LLC*, 841 F.3d 944, 951 (11th Cir. 2016) (same). Thus, resolving the question of whether the property owners' association assessments are "debts" under the FDCPA requires determining whether Zigman purchased the underlying building lots for a "personal, family, or household" purpose.

The Second Circuit has provided limited guidance as to what evidence is sufficient to show that property that is the subject of a transaction has a personal, family, or household purpose.[6] "Actions arising out of commercial debts are not covered" by the FDCPA. *Goldman v. Cohen*, 445 F.3d 152, 154 n.1 (2d Cir. 2006), *superseded by statute on other grounds as stated in Carlin v. Davidson Fink LLP*, 852 F.3d 207, 212-13 (2d Cir. 2017). However, the Second Circuit has only twice considered whether a transaction arose from a commercial as opposed to a personal purpose, and in both cases, it decided this question in an unpublished decision on a motion to dismiss. *See Scarola*, 638 F. App'x at 102 (affirming the dismissal of an FDCPA claim in which "alleged debt arose from purported transactions related to a business telephone account of [a] law firm"); *Paushok*, 2022 WL 1421844, at *2 (affirming the dismissal of an FDCPA claim in which the purported debt involved a surety agreement made in connection with a company's gold-mining enterprise).

---

[6] Instead, the Second Circuit's decisions constructing the term "debt" have tended to focus on what constitutes a "transaction." *See, e.g.*, *Beauvoir v. Israel*, 794 F.3d 244, 247 (2d Cir. 2015); *Eades*, 799 F.3d at 170.

11

When resolving ambiguities in the text of other FDCPA provisions, the Second Circuit has construed the statutory text in light of the "FDCPA's broad, pro-debtor objectives." *Alibrandi v. Fin. Outsourcing Servs., Inc.,* 333 F.3d 82, 87 (2d Cir. 2003); *see also Pipiles v. Credit Bureau of Lockport, Inc.,* 886 F.2d 22, 27 (2d Cir.1989) ("It is clear that Congress painted with a broad brush in the FDCPA to protect consumers from abusive and deceptive debt collection practices."); *Clark v. Cap. Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1176 (9th Cir. 2006) ("Because the FDCPA . . . is a remedial statute, it should be construed liberally in favor of the consumer." (quoting *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002))). Following the Second Circuit's lead, district courts distinguishing between personal and commercial purposes frequently emphasize the FDCPA's goal of "regulate[ing] the debt collection tactics employed against *personal* borrowers on the theory that they are likely to be unsophisticated about debt collection and thus prey to unscrupulous collection methods." *Nicolaides v. Divine & Serv., Ltd.*, 382 F. Supp. 3d 251, 258 (E.D.N.Y. 2019) (emphasis in original) (citing *Miller v. McCalla, Raymer, Patrick, Cobb, Nichols, & Clark, L.L.C.,* 214 F.3d 872, 875 (2000)). For example, in *Nicolaides*, another judge in this District held that personal charges on a corporate credit card did not give rise to a "debt" under the FDCPA because the holder of a corporate credit card is not the type of unsophisticated consumer the FDCPA was enacted to protect. 382 F. Supp. at 258.

So too in *Rosa*, the court conducted a thorough survey of the caselaw addressing the "proof required to create a genuine issue of fact whether an alleged debt is consumer or commercial." 2024 WL 871209, at 6. Based in part on the reasoning of *Nicolaides*, the court held that whether a debt is consumer debt hinges on whether, "[c]onsidering all relevant factors and viewing the transaction as a whole, a 'reasonable inference' can be drawn that the debt was

incurred for consumer rather than business purposes." *Rosa*, 2024 WL 871209, at \*6–8. This standard is broad and permits courts to "look beyond the subjective intent motivating specific transactions," and to consider all other relevant pieces of evidence, such as whether the plaintiff made the subject purchase using a "consumer rather than business account." *Id.* at \*6. Because this broad standard comports with the purpose of the FDCPA, I apply it here.

However, *Rosa* does not answer the question of what constitutes a "business purpose" in the context of real property. On that issue, courts regularly hold that while transactions "for personal residences can constitute a 'debt' under the FDCPA," transactions "for investment or rental properties do not constitute 'debt' under the FDCPA." *Jones v. New Penn Fin., LLC*, No. 19-cv-1493, 2020 WL 8771252, at \*4 (E.D.N.Y. Nov. 13, 2020), *report and recommendation adopted*, 2021 WL 405888 (E.D.N.Y. Feb. 5, 2021); *see also Akinfaderin-Abua v. Dimaiolo*, No. 13-cv-3451, 2014 WL 345690, at \*3 (D.N.J. Jan. 30, 2014) (collecting cases)*. Indeed, "many courts" have held that even "debts related to rental properties which generated personal, rather than business, income are *not* subject to the FDCPA." *Van Note v. Specialized Loan Servicing, LLC*, No. 21-cv-12022, 2022 WL 2209867, at \*4 (D.N.J. June 21, 2022) (collecting cases) (emphasis added). In *Van Note*, for example, a court held that because a plaintiff did not argue that a rental property was his personal residence, debts relating to the property were not incurred for "personal, family, or household purposes." *Id.* By contrast, in *Pape v. Law Offices of Frank Peluso*, No. 3:13-cv-63, 2016 WL 53821, at \*4 (D. Conn. Jan. 5, 2016), a court held that a home improvement loan constituted a consumer debt because, although the plaintiff intended to sell his home, the plaintiff took out the loan for the purposes of "improving the home in which he resided at that time." *Id.* \*3. Moreover, the court noted, the plaintiff's status "as a consumer . . . is reinforced by his failure to review the loan documents himself" as this fact demonstrated that

13

the plaintiff was "precisely the 'unsophisticated' consumer which the FDCPA seeks to protect from 'unscrupulous methods.'" *Id.* at \*4 (citing *Miller*, 214 F.3d at 875).

Applying these principles here, Zigman has failed to show a genuine dispute of fact that he purchased the underlying building lots for a "personal, family, or household" purpose. Indeed, his argument on summary judgment that he purchased the building lots for a such a purpose is belied by his own deposition testimony that "there was really no purpose . . . no rhyme or reason for buying [the building lots]." (Zigman Dep. 22:5–10, 37:9–23; *see* Pl.'s MSJ Mem. at 4.) To conclude otherwise would require that I infer that what Zigman meant when he said he made the purchase for "no rhyme or reason" was that his purchase was analogous to an impulsive retail purchase of the type consumers frequently make. *See Ballard v. Equifax Check Servs., Inc.*, 158 F. Supp. 2d 1163, 1170 (E.C. Cal. 2001) (recognizing a presumption, adopted by "a number of district courts," that retail purchases with a personal check "create[] a rebuttable presumption that the transaction was consumer in nature"). However, Zigman has not raised such an argument. Moreover, even if he had and given the unique nature of real property, Zigman's admission that he never resided at any of the lots raises the alternative possibility that he may have purchased the building lots for investment or commercial purposes and simply never developed the properties or otherwise paid assessments to the property owner associations. *See* Pl.'s Rule 56.1 Statement Resp. ¶¶ 3, 6, 8. 11; *Pape*, 2016 WL 53821, at \*4 (relying on a plaintiff's residence at a property, as a determinative fact, in concluding that it was a consumer debt).

Here, Zigman has failed to point to any specific evidence in the record that, when "viewing the transaction as a whole," would support "a 'reasonable inference' . . . that the debt was incurred for consumer rather than business purposes." *Rosa*, 2024 WL 871209, at \*8; *see*

14

*also CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 125 (2d Cir. 2013) ("[In resolving a motion for summary judgment] the District Court is not required to scour the record on its own in a search for evidence when the plaintiffs fail to present it."). The parties agree that Zigman has "little or no recollection" regarding the purchases, and Zigman testified that he does not know "what was going on through [his] head back then." (Pl.'s Rule 56.1 Statement Resp. ¶¶ 4, 9; Zigman Dep. 17:21–23.) For example, Zigman did not know at his deposition how many building lots he purchased, where in Pennsylvania the lots are located, what year he purchased them in, or even whether he still owns the property. (Zigman Dep. 16:18–20, 19:13–15, 23–25, 34:13–23, 35:13–15, 36:5–7.) All Zigman knows is that the lots are somewhere in Pennsylvania and that he purchased them on ebay for probably around "a few hundred dollars" or "maybe one [lot] for 1,000 [dollars]." (*Id.* 22:2–22, 36:21–37:8.)[7]

During the discovery process, Zigman could have developed the factual record, yet neither of the parties' Rule 56.1 statements include any facts that would shed more light on whether Zigman's purchase of the lots was for personal, family, or household purchase, such as details about the nature of the lots, how they were marketed, any contracts or leases entered into by Zigman, or any information about Indian Rocks and The Hideout, beyond the fact that they are property owners' associations. Instead, Zigman relies upon only his "little or no recollection" about the purchases, in opposing summary judgment, and therefore a reasonable juror could only conclude, by "mere speculation or conjecture," that he purchased the building lots for a personal,

---

[7] Zigman does not argue that the fact that he purchased the lots on ebay and that he paid no more than $1,000 for one of the lots supports a "reasonable inference" that the debt was "incurred for consumer rather than business purposes." *Rosa*, 2024 WL 871209, at *8. Such an argument would be unpersuasive because when considering such facts in light of the whole transaction, I must also consider Zigman's admission that there was "no rhyme or reason" for the purposes.

family, or household purpose. *Hicks*, 593 F.3d at 166; *see also Burton v. Kohn L. Firm, S.C.*, 934 F.3d 572, 580 (7th Cir. 2019) (holding that where a plaintiff "had no knowledge of" purchases made on a Citibank account, the "bald assertion" that debt was a "consumer debt" "[w]ithout more . . . is hardly affirmative evidence that the debt was a consumer debt"); *Boosahda v. Providence Dane LLC*, 462 F. App'x 331, 335 (4th Cir. 2012) (holding that where the plaintiff could neither "recall obtaining" credit cards at issue nor "remember making any purchases with those cards," the plaintiff had not established a genuine issue of material fact as to the purpose of the credit cards).

In response, Zigman makes two arguments, neither of which is supported by citation to any legal authority or to any facts in the record. First, Zigman argues that there is "no evidence in the records that the 'debts' [at issue] . . . . were involved with 'investment transactions'" and the "only 'debts' not covered under the [FDCPA] are corporate debts or debts for agricultural purposes." (Pl.'s MSJ Mem. at 4.) Second, he argues in conclusory fashion that he is a "natural person," Defendants "are well-known in the community of attorneys as a collection firm," and the default judgment actions "undoubtedly reflect attempts to collect money from [Zigman] based upon an alleged obligation . . . to pay for 'work, labor, services, goods and lease.'" (*Id.* at 4–5.) Neither argument is persuasive.

Zigman's first argument that there is no evidence that the purchase was an investment transaction is factually incorrect given Zigman's admission that he never resided in the building lots. It also confuses the burden of proof. Although Defendants bear the initial burden of demonstrating that no genuine issue of material fact exists, *Balderramo*, 668 F. Supp. 3d at 219, Defendants can satisfy that burden by "showing that little or no evidence may be found in support of the [non-movant's] . . . case." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22

16

F.3d 1219, 1223 (2d Cir. 1994); *see also F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010). Here, Defendants have met that burden for the reasons already set out. In order to defeat summary judgment, it is therefore Zigman's responsibility to "come forward with admissible evidence sufficient to raise a genuine issue of fact for trial" that he purchased the property for a personal, family, or household purpose such that the FDCPA applies. *Jaramillo*, 536 F.3d at 145; *cf. Rosa*, 2024 WL 871209, at *6 (explaining that in order to prevail on an FDCPA claim, the plaintiff has the burden of showing that a debt is a consumer debt). Zigman cannot satisfy that burden by merely pointing to a lack of evidence that the debt arose from an investment transaction, particularly where that absence exists precisely because Zigman testified that there was no "rhyme or reason" to his purchase of the property and has failed to produce almost any evidence about either the property or his purchase of them.

Zigman's second argument is similarly unpersuasive. Although Zigman is a "natural person," that is insufficient to show that the debt at issue arose from a transaction incurred primarily for personal, family or household reasons. Here, Zigman may be the type of "unsophisticated" purchaser that the FDCRA was enacted to protect, in light of his testimony that "the only reason [he] bought [the building lots] was" his intellectual disability. Zigman Dep. 22:5–10, 37:9–23; *see supra* note 2; *Nicolaides*, 382 F. Supp. 3d at 258. There is also evidence that Zigman did not realize at the time of his purchase that Indian Rocks and The Hideout were property owners' associations or that he was required to pay assessments to these entities. *See* Zigman Dep. 17:18–18:4, 37:25–38:5; *Pape*, 2016 WL 53821, at *4 (considering that Pape did not review the loan documents). However, it is not enough for Zigman to show that he is an unsophisticated purchaser without some material evidence tending to show that he purchased the property for a "primarily personal, family, or household" purpose. 15 U.S.C. § 1692a(5). After

17

all, the statute defines a "debt" to require *both* a an "obligation . . . of a *consumer*" and that the subject of the transaction is "primarily for personal, family, or household purposes." *Id*. To conclude that Zigman incurred a debt solely because he is an unsophisticated purchaser would read the "personal, family, or household purposes" clause out of the statute. *See Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013) (holding that although the "cannon against surplusage is not an absolute rule," it is "generally presumed that statutes do not contain surplusage"). Indeed, the Second Circuit has rejected, on similar grounds, the argument that because "collection efforts were targeted at an individual, the alleged non-exist debt should be deemed to arise from a personal transaction" *See Scarola*, 638 Fed. App'x at 103 (reasoning that such an interpretation of the term debt "debt" would define "consumer debt in accordance with the actions of the debt collector, rather than the true nature of the debt," thereby "contradict[ing] the plain language of the statute"); *see also Rosa*, 2024 WL 871209, at *5 ("By the [FDCPA's] plain language, it is not sufficient that the plaintiff be a natural person or even a consumer obligated to pay a debt.").

Finally, Zigman's argument that Defendants are a well-known collection firm is even less persuasive. Not only does the Second Circuit's decision in *Scarola* "foreclose[] consideration of the debt collector's conduct in determining the nature of the debt," *Rosa*, 2024 WL 871209, at *5 (citing *Scarola*, 638 Fed. App'x at 103), but Zigman's assertion that Defendants are a well-known election firm is wholly conclusory.

Accordingly, summary judgment is granted in favor of Defendants on Zigman's FDCPA claims because Zigman has not shown a material dispute of fact that the debts at issue are "consumer" debts as required for the FDCPA to apply.

18

II.        **New York General Business Law Claim**

A district court "may decline to exercise supplemental jurisdiction over a claim . . . [where it] has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). "In the usual case in which all federal-law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state-law claims." *Chinniah v. FERC*, 62 F.4th 700, 703 (2d Cir. 2023). Having granted summary judgment on the federal claims brought by Zigman for the reasons set forth above, I decline to exercise supplemental jurisdiction over Zigman's New York General Business Law claim. *See* 28 U.S.C. § 1367(c)(3); *Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 405 (2d Cir. 2017) (Calabresi, J., concurring) (the Second Circuit "takes a very strong position that state issues should be decided by state courts"). Accordingly, Zigman's New York General Business Law claim is dismissed without prejudice and with leave to refile in state court.

## CONCLUSION

For the reasons set forth above, Defendants' Cross-Motion for Summary Judgment (ECF No. 32) is granted as to Zigman's FCPA claims, and Zigman's New York General Business Law claim is dismissed without prejudice and with leave to refile in state court. Accordingly, Zigman's Cross-Motion for Summary Judgment (ECF No. 33) is denied. The Clerk

of Court is respectfully directed to enter judgment consistent with this Memorandum and Order

and close the case.


Dated: Central Islip, New York
        February 25, 2026

  _/s/ Nusrat J. Choudhury_____
  NUSRAT J. CHOUDHURY
  United States District Judge